UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KAREN L. SHEWMAKER,

        Plaintiff,               CIV. S-04-0753 PAN

     v.

JO ANNE B. BARNHART,             Memorandum of Decision
Commissioner of Social
Security,

        Defendants.

—oOo—

Pursuant to 42 U.S.C. § 405(g), plaintiff requests this court review defendant's decision denying plaintiff disability benefits.

If eligible, to qualify for benefits a claimant must establish inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Defendant bases her decision upon a five-step analysis.  First, the claimant must not currently be working.  20 C.F.R. § 404.1520(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant can do his past work benefits are denied.  20 C.F.R. § 404.1520(e).  Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. § 404.1520(f).

Defendant found plaintiff was eligible until December 31, 1995, that before then plaintiff was diagnosed with "L5-S1 degenerative disc disease with extruded disc and disc fragment at L5, central disc protrusion at L3, and degenerative disc disease at L4" but her impairments did not meet or equal any listed impairment and did not prevent her from performing her past work as a bookkeeper and she was not disabled for any 12-month period before her insured status expired December 31, 1995.

This court must uphold the Secretary's determination that a plaintiff is not disabled if the Commissioner applied the proper legal standards and if the Secretary's findings are supported by substantial evidence.  <u>Sanchez v. Secretary of</u>

Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987). The question is one of law. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Substantial evidence means more than a mere scintilla, Richardson v. Perales, 402 U.S. 389 (1971), but less than a preponderance. Bates v. Sullivan, 894 F.2d 1059, 1061 (9th Cir. 1990). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401. The court cannot affirm the Commissioner simply by isolating supporting evidence but must consider the entire record, weighing evidence that undermines as well as evidence that supports the Secretary's decision. Gonzalez v. Sullivan, 914 F.2d at 1200. If substantial evidence supports administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if the proper legal standards were not applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

     This matter was previously before this court. Entitlement to benefits depended upon the weight to be given the opinion of two treating physicians and the court remanded the matter to defendant to reconsider those opinions for the reasons next explained.

     In May 1998, Dr. Daniel Bibelheimer, a treating physician, found plaintiff incapable of work. Tr. 256-59. In

1  June 1998, Dr. Christopher Claydon, who treated plaintiff from
2  April 1995 until mid-1997 (i.e., during the critical period when
3  her insured status expired), reviewed Dr. Bibelheimer's report
4  and wrote:

> I would agree that Dr. Bibelheimer's assessment
> gives a reasonable view of the patient's symptoms
> while she was in my care, though her symptoms were
> slightly more severe through 1997/1998.  Tr. 262.

8   Plaintiff previously argued that defendant failed to give
9  any reasons for rejecting Dr. Claydon's "opinion as to her
10 limitations."  This court found that Dr. Claydon's June 1998
11 letter expressed his opinion that Dr. Bibelheimer's May 1998
12 assessment gave "a reasonable view of [plaintiff's] symptoms" and
13 in light of the context, construed Dr. Claydon's reference to
14 "symptoms" to include functional limitations.  Tr. 319.  The
15 court noted that although the opinion of a treating physician is
16 not binding on the administrative law judge, it is entitled to
17 special weight because the treating physician "is employed to
18 cure and has a greater opportunity to know and observe the
19 patient as an individual."  Tr. 319, citing McAlister v.
20 Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989); Davis v. Heckler,
21 868 F.2d 323, 326 (9th Cir. 1989).  If there is no contradictory
22 medical opinion, the administrative law judge may reject the
23 treating physician's opinion only for clear and convincing
24 reasons.  Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.
25 1991).  Even when the treating physician's opinion is
26 contradicted by another doctor, the administrative law judge can

4

disregard the treating physician only by articulating "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id.; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The administrative law judge previously considered Dr. Bibelheimer's opinion as follows:

> Daniel J. Bibelheimer, M.D., reported on May 28, 1998 that the claimant suffered lumbar disc disease and L5 radiculitis with an onset of December 1994. Dr. Bibelheimer limited the claimant to intervals of sitting, standing and walking of one hour each. Walking was limited to a distance of one-half mile. Alternate sitting and standing on a hourly basis was recommended. The claimant was limited to lifting and/or carrying 10 pounds occasionally and 5 pounds frequently. She was reported able to occasionally climb stairs. No impairment was found for her ability to reach, handle, feel, see, hear or speak. There are no clinical notes or objective records for the period from December 10, 1994 through and including December 31, 1995 to support Dr. Bibelheimer's opinions that the claimant's medication limited her concentration, that she would be required to lie down 2 to 3 times per day, or that she could not sustain full-time sedentary work activity. Dr. Bibelheimer specifically did not find that the claimant suffered fatigue secondary to her impairment. Tr. 18.

Dr. Bibelheimer found that prescribed medicine sometimes caused stomach upset, drowsiness and loss of clarity of thinking. He also found that plaintiff could not push or pull, could not sit, stand or walk without interruption for an hour, could not work an eight-hour day and that she was likely to be absent from work more than four times a month. Tr. 256-58. The court found that, essentially, defendant rejected Dr. Bibelheimer's opinion about

5

these limitations, which disqualify plaintiff from even sedentary work,[1] because he had "no clinical notes or objective records for the period from December 10, 1994 through and including December 31, 1995." Tr. 320. But the court explained there was nothing in the record to support the finding that Dr. Bibelheimer did not have clinical notes or records for 1995 although, since he did not begin treating plaintiff until sometime in 1997, it would not be surprising. But if Dr. Bibelheimer's opinion was to be rejected because he wasn't caring for plaintiff at the relevant time and, thus, had no records of her condition from that time, that was no reason to reject the opinion of Dr. Claydon, who <u>was</u> treating her then.[2] Accordingly, the court found that defendant had failed to articulate specific, legitimate reasons for rejecting the opinions of the two treating physicians and that

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally (from very little up to one-third of the time) lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about two hours of an eight-hour workday, and sitting should generally total approximately six hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles. 20 C.F.R. § 404.1567(a); SSR 83-10.

[2] Defendant has a duty scrupulously and conscientiously to probe, inquire of and explore for all relevant facts, with equal diligence toward eliciting favorable and unfavorable facts. <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978). Defendant also undertakes to request the results of a treating physician's diagnostic tests and procedures. 20 C.F.R. § 404.1519m.

the error was prejudicial.  Plaintiff had argued that the only other medical evidence about plaintiff's limitations was the opinion of consulting physicians that plaintiff retained the capacity for medium work,[3] which the administrative law judge also implicitly rejected, resulting in an altogether arbitrary decision that she could perform sedentary work that is based on no medical evidence whatever.  Defendant did not address the claim and accordingly the court took it as conceded.  The court did not previously address plaintiff's subjective complaints because they could not properly be evaluated until the objective evidence was settled (and, if the treating physicians' opinions should have been credited, her complaints may become immaterial[4]).  Finally, because there was conflicting medical opinion and because the record might not be fully developed regarding clinical support for Dr. Claydon's opinion, the court found this was not a proper case to reverse with instructions to award benefits.

Upon remand, defendant found that Dr. Bibelheimer did not

---

[3] Dr. John Hanson reviewed the medical records in April 1997 and found that plaintiff could frequently lift and carry 25 pounds and occasionally lift and carry 50 pounds, that she could stand or walk for 6 hours a day and sit for six hours a day.  Tr. 199.

[4] This is so because the first step in evaluating a claimant's subjective complaints requires asking whether the claimant has a medically determinable impairment that could reasonably be expected to produce the subjective limitations.  20 C.F.R. § 416.929(c)(1).  Dr. Bibelheimer (and Dr. Claydon by implication) expressly found that plaintiff's condition would reasonably be expected to produce the pain she described and that her complaints were credible.  Tr. 258.  If these opinions are rejected, consideration of the verity of plaintiff's complaints is significantly altered.

begin treating plaintiff until 1997 and, though he may have reviewed records of prior treatment, his opinion about her condition before December 1995 was not entitled to the special weight ordinarily given to the opinions of treating physicians because he was not in a position personally to observe her at the pertinent time.  Tr. 306.  This is not a valid reason for failing to give Dr. Bibelheimer's opinion the weight due as plaintiff's treating physician.  The opinion of a treating physician is entitled to special weight because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987); <u>see</u> <u>also</u>  20 C.F.R. 404.1502.[5] Defendant construed Dr. Claydon's opinion to express concurrence with Dr. Bibelheimer's opinion insofar as it related to the period after expiration of plaintiff's insured status and ostensibly accepted it.  Tr.  307.  This is an entirely too begrudging interpretation of what Dr. Claydon actually said, viz. "her symptoms were <u>slightly</u> more severe through 1997/1998."  If there was legitimate uncertainty about whether the "slight"

---

[5] "Treating source" means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

8

difference in severity meant the difference between an award or no award, defendant ought to have better developed the record by asking him.

The decision is reversed with directions to award benefits.

Dated:  May 11, 2005.

                                      /s/ Peter A. Nowinski
                                      PETER A. NOWINSKI
                                      Magistrate Judge